## HART v WAYNE COUNTY

1. APPEAL AND ERROR—BRIEF ON APPEAL—ISSUE ABANDONMENT—COURT RULES.

   An appellant's failure to file a brief generally constitutes issue abandonment (GCR 1963, 813).

2. STATUTES—CONSTITUTIONAL LAW—JUDGES—RECORDER'S COURT—JUDGES' SALARIES—TAXATION—ELECTIONS—CITY RESIDENTS—COUNTY RESIDENTS.

   A public act which assesses Wayne County taxpayers for a portion of the Recorder's Court of Detroit judges' salaries was never constitutionally adopted because the act is local in character and required a referendum vote by the electors in the affected district to take effect, the funding provision of the act affected electors throughout the county but the electors in the referendum vote were limited to city residents and did not include Wayne County voters living outside the city; therefore, Wayne County is not empowered to assess its taxpayers for any part of the salary costs of the judges of the Recorder's Court.

3. STATUTES—CONSTRUCTION—LEGISLATURE—CONSTITUTIONAL LAW—COURTS.

   The Legislature's opinion as expressed in a public act must give way to the clear language of the Constitution where interpretation of that document is involved; long acquiescence by taxpayers or time-honored administrative practice does not relieve the Court of its duty to declare that a statute which was unconstitutionally adopted is null and void.

Appeal from Wayne, Blair Moody, Jr., J. Submitted Division 1 December 9, 1974, at Detroit. (Docket No. 19285.) Decided May 28, 1975. Leave to appeal granted, 394 Mich 780.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 686.
[2] 42 Am Jur 2d, Initiative and Referendum § 9 *et seq.*
[3] 73 Am Jur 2d, Statutes § 254.

Complaint by George Z. Hart against Wayne County, the City of Detroit and others for injunctive relief to prevent use of county tax funds for payment of salaries to judges of the Recorder's Court of Detroit. The Recorder's Court judges intervened as defendants. Summary judgment for defendants. Plaintiff appeals. Reversed.

*James Thomson,* for plaintiff.

*Aloysius J. Suchy,* Corporation Counsel, and *David R. Kaplan,* Assistant Corporation Counsel, for Wayne County.

*Robert Reese,* Corporation Counsel, and *Maureen P. Reilly* and *John E. Cross,* Assistants Corporation Counsel, for the City of Detroit.

*Alphonso R. Harper,* Judicial Assistant, for intervening defendants, judges of the Recorder's Court.

*Samuel Brezner,* for Judges Donald S. Leonard and Joseph E. Maher.

*Fenton, Nederlander, Dodge, Barris, Gribbs, Ritchie & Crehan, P. C.,* for Judges Samuel H. Olsen and Robert J. Colombo.

*S. Allen Early, Jr.,* for Judge Clarence Laster, Jr.

*Harrison, Friedman & Roberson, P. C.,* for Judge Michael J. Connor.

Before: Bronson, P. J., and McGregor and Carland,* JJ.

Bronson, P. J. The County of Wayne has funded portions of the salaries of Detroit Recorder's Court judges for 55 years. The legality of that well-established practice is challenged in this appeal.

Appellant can hardly take credit for this, however. He has failed to submit a brief in accordance with GCR 1963, 813. We have been given a sheaf of papers labeled "brief", but careful and repeated readings of its contents have as yet served no purpose. Appellant's one-paragraph "argument" is simply a series of unsupported conclusions. If this were the usual case, we would hold that appellant's failure to file a brief constitutes issue abandonment. *Mitcham v Detroit,* 355 Mich 182, 203; 94 NW2d 388 (1959).

But this is not the usual case. The trial judge, the principal defendants, and the intervening defendants have done an excellent job in developing, researching, and analyzing the troublesome issues presented here. We have also been favored with a comprehensive, scholarly opinion by the trial judge. Because this case involves the important question of the constitutionality of a state statute, because its resolution affects all of the residents of Wayne County, and because it has been properly prepared for decision, plaintiff's failure to shoulder his appellate burden should be ignored.

The parties agree that this case involves solely a question of law and can appropriately be disposed of by summary judgment. We proceed to consider whether the trial judge erred in entering summary judgment on behalf of defendants rather than plaintiff.

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

## I.

Prior to 1920, the judges of the Recorder's Court of the City of Detroit were paid pursuant to MCLA 726.6; MSA 27.3556, which provides, in pertinent part:

"Each of said judges shall receive *from the treasury of the state of Michigan* the same annual salary as may be payable to circuit judges. * * * " (Emphasis added.)

In 1919, the Michigan Legislature enacted PA No. 369. This act was enabling legislation designed to permit our cities to establish municipal courts and to allow municipalities already possessing municipal courts to adopt the procedural alterations it contained. Section 13 of the 1919 act[1] provides, in relevant part:

"Each judge of said court, including the presiding judge, shall receive an annual salary from the *county* in which said court is located in the same amount as that paid by the State to circuit judges * * * ."[2] (Emphasis supplied.) On April 5, 1920 the 1919 act was approved by a majority of the electorate of the City of Detroit.[3]

Since Recorder's Court is the municipal court for the City of Detroit, *People v Buckley,* 302 Mich 12, 18; 4 NW2d 448 (1942), *Moline v Judge of Recorder's Court,* 238 Mich 78, 82; 213 NW 204 (1927), when the 1919 act was adopted by referendum, it necessarily amended

---

[1] MCLA 725.13; MSA 27.3953.

[2] The italicized word "county" is inexplicably and erroneously made "city" in the MSA version. This may reflect a codification of 1923 PA 278 which was another piece of enabling legislation allowing municipalities to replace "county" with "city" in the original statute. 1923 PA 278 was never submitted to a referendum and therefore never became law in the City of Detroit.

[3] Counter-affidavit of James Jackson, Jr., Deputy City Clerk for the City of Detroit.

those portions of the Recorder's Court act[4] with which it was inconsistent. Therefore, if the act of 1919 was validly adopted, then it supersedes MCLA 726.6; MSA 27.3556. If it was not validly adopted, then MCLA 726.6; MSA 27.3556—providing for *state* payment of the judges' salaries—remains applicable to Recorder's Court.

## II.

Plaintiff attacks the assessment of Wayne County residents for payment of part of the salaries of the judges of the Recorder's Court.[5] Plaintiff is a resident taxpayer of Wayne County but not a resident of the City of Detroit. He seeks to relieve similarly situated Wayne County taxpayers of those future assessments the proceeds of which are used to pay the judges' salaries.

We have concluded that 1919 PA 369 was never constitutionally adopted, that MCLA 726.6; MSA 27.3556 is still in force, and that plaintiff is therefore entitled to the relief requested.

At the time of the passage of the 1919 act and the 1920 referendum held in the City of Detroit to consider its adoption, the Constitution of 1908 governed. Article 5, § 30 of that Constitution provided, in pertinent part, as follows:

"No local or special act * * * shall take effect until approved by a majority of the electors voting thereon in the district to be affected."[6]

---

[4] 1883 PA 326, amending 1857 PA 55, which created Recorder's Court. For a history of the legislation see *Attorney General, ex rel Cotter v Lindsay,* 221 Mich 533, 535; 191 NW 826 (1923).

[5] Plaintiff's standing to assert the arguments discussed here is established by *Menendez v Detroit,* 337 Mich 476; 60 NW2d 319 (1953), *Alan v Wayne County,* 388 Mich 210, 363; 200 NW2d 628 (1972).

[6] For a similar provision in the 1963 Constitution, *see* Const 1963, art 4, § 29.

There can be no doubt that 1919 PA 369 is a local act. The Supreme Court of Michigan explicitly so held in *Attorney General, ex rel Cotter v Lindsay,* 221 Mich 533, 536; 191 NW 826 (1923). That case presented the question whether an amendment to 1919 PA 369 had been properly adopted in the City of Detroit. The amendment, 1921 PA 364, contained no referendum clause and no referendum vote was ever held. The Court invoked art 5, § 30 of the 1908 Constitution and said:

"Whether we consider the object of the act of 1919 as expressed in its title, consider the act in its entirety, or consider the limitations placed on the referendum found in section 7,[7] we are irresistably forced to the conclusion that the act is amendatory of local legislation and is local in character."

In concluding that 1921 PA 364, as an amendment of the act of 1919, was a local act, the Court necessarily decided that the act of 1919 was itself local in character.[8]

---

[7] "Sec. 7. This act other than this section shall not become operative in any municipality of the State unless and until it is submitted to a vote of the qualified electors thereof and ratified by a majority of the electors voting thereon. The legislative body of any city now having a municipal court of record may by a majority vote thereof submit to the qualified electors the question of adopting the provisions of this act or said questions may be submitted by initiatory petition in the same manner and with like effect as is or may be provided by law for the proposal and submission of amendments to the charter of any such city. All proceedings with reference to the submission of the question shall conform as nearly as may be to the requirements of the State law governing the submission of charter amendments; and the votes cast on the question shall be counted, canvassed and returned and the result declared in the same manner. A recount of the votes so cast may also be had in the same manner as is or may be provided for a recount of the ballots cast on proposed charter amendments."

[8] The constitutionality of 1919 PA 369 was not before the *Lindsay*

It is also clear that Wayne County voters living outside of the City of Detroit did not vote in the April 5, 1920 referendum which resulted in the apparent adoption of 1919 PA 369. Rather, the election was restricted to "the qualified electors" of the City of Detroit in accordance with § 7[9] of the act.

The question remaining is whether Wayne County residents inhabit a portion of the "district to be affected" by the 1919 act such that they were constitutionally entitled to vote for or against its adoption before it could become effective.

Defendants argue that the City of Detroit is the only "district affected" by the act, because it primarily reorganized and improved the Recorder's Court for the City of Detroit. This "local court refurbishing"[10] is said to affect Wayne County only insignificantly. The only other part of the act—the funding portion—need not be approved by referendum, the argument continues, because the Legislature has the power to order Wayne County taxpayers to pay the salaries of the Recorder's Court judges. And since the voters of the City of Detroit —the district affected—approved that portion of the act which required a referendum,[11] it is said that 1919 PA 369 was validly adopted in Detroit.

Court; its validity was conceded by the parties for purposes of argument. *Lindsay, supra*, at 535. In no case has the constitutionality of 1919 PA 369 ever been squarely presented. *See Gildemeister v Lindsay*, 212 Mich 299; 180 NW 633 (1920), *Beck v Keidan*, 215 Mich 13; 183 NW 742 (1921), *Grosscup v Wayne Circuit Judge*, 233 Mich 362; 206 NW 580 (1925), *Kates v Reading*, 254 Mich 158; 235 NW 881 (1931).

[9] *See* n 7, *supra*.

[10] This term was coined by the trial judge.

[11] Though the referendum held in Detroit included the funding portion of the act, the vote on that portion is said to have been superfluous since the Legislature is claimed to possess the authority to require Wayne County taxpayers to pay the salaries in any event.

Even if we were to accept the contention that the local features of the 1919 act do not affect Wayne County in an important way,[12] we are unable to find support for the assertion that Wayne County can be forced to fund Recorder's Court judges' salaries in the manner contemplated by the act.[13] It is true that if the Legislature were to pass a *general* law calling for statewide county payment of municipal court judges' salaries, Wayne County residents could constitutionally be required to provide financial support. *Wayne Circuit Judges v Wayne County,* 386 Mich 1; 190 NW2d 228 (1971). Wayne County residents would in that case have to be content with having been represented by their duly elected legislators in the decision to enact a general statute.

However, we face here a *local* law which seeks to impose on Wayne County residents a financial burden without their majority approval as required by the Constitution.[14] The cases cited in support of the proposition that the Legislature can require Wayne County residents to pay these salaries were decided *before* the 1908 Constitution was adopted, adding the protection embodied in art 5, § 30. *People ex rel Bristow v Supervisors of Macomb County,* 3 Mich 475 (1955), *People ex rel Schmittdiel v Board of Auditors,* 13 Mich 233 (1865). No case decided since the effective date of

---

[12] One would think that the efficiency of the Recorder's Court has a serious impact on all Wayne County residents.

[13] We do not decide whether the Legislature can ever allow one group of citizens to impose fiscal burdens on another group of citizens without the latter's having a voice in the decision. That delegation problem is not before us.

[14] In addition, Wayne County residents who, like plaintiff, are not also residents of the City of Detroit are prohibited from voting in a Recorder's Court judges' election, MCLA 168.426c; MSA 6.1426(3). Their residency also makes them unqualified to run for the office of Recorder's Court judge. MCLA 168.426b; MSA 6.1426(2).

this constitutional provision has suggested that the power previously held by the Legislature—as documented in *Schmittdiel* and *Bristow*—has somehow been reestablished in Lansing in derogation of the plain language of the Constitution. We are not at liberty to ignore the mandate of art 5, § 30. It was designed to prevent exactly what occurred here. Its purpose was eloquently announced by Justice Brooke in *Attorney General ex rel Dingeman v Lacy,* 180 Mich 329, 337–338; 146 NW 871 (1914):

"Considering the history of legislation under the Constitution of 1850, it is apparent that there had grown up a pernicious practice on the part of the legislature in passing local acts. The practice was bad in two very important particulars. In the first place, much of the legislation thus enacted constituted a direct and unwarranted interference in purely local affairs and an invasion of the principles of local self-government. In the second place, such legislation affecting as it did certain limited localities in the [s]tate, the senators and representatives from unaffected districts were usually complaisant, and agreed to its enactment without the exercise of that intelligence and judgment which all legislation is entitled to receive from all the members of the legislature. This course led to many abuses (principally in amendments to city charters), some of which found their way into the courts, and were there redressed so far as the Constitution then in force would permit.

"With these evils in mind, the Constitution of 1909 *[sic]* was formulated and adopted by the people. From a reading of the provisions above quoted and others of a similar character, it is, we think, entirely clear that it was the settled purpose of the framers of the new instrument and of the people who adopted it to forever insure to the people the right to control their affairs purely local, and to secure for all general legislation grave attention and the application of the collective wisdom of the legislators."

It cannot seriously be suggested that a funding provision does not affect those who are called upon to use their hard-earned incomes to meet its demands. With good reason, it is often the funding provisions of statutes which are considered most important by the electorate.

Because 1919 PA 369 is a local act, because it affects the voters of Wayne County in a way that requires their participation in a referendum of the "electors * * * in the district to be affected" in accordance with art 5, § 30 of the 1908 Constitution, and because only Detroit residents voted in the election purporting to adopt it, 1919 PA 369 never became law in the City of Detroit.

We are asked nevertheless to ignore this clear constitutional infirmity and legitimate the 55-year-old practice of assessing Wayne County taxpayers a portion of the cost of Recorder's Court judges' salaries.[15] This we refuse to do.

This is not a case involving the construction of the statute whose legislative purpose is in doubt and where a long-standing legislative interpretation would properly be accorded considerable weight. *People v Detroit, G H & M R Co,* 228 Mich 596, 611; 200 NW 536 (1924), *Menton v Cook,* 147 Mich 540; 111 NW 94 (1907), 2A Sutherland, Statutory Construction (4th ed), § 49.07, pp 251–255. The Legislature's opinion in this case is quite clear: by providing for a referendum restricted to the voters of the City of Detroit, it registered its view that only those residents were affected by the 1919 act. That opinion, even given repeated reaffir-

---

[15] This request comes mainly from defendant Wayne County, whose corporation counsel has prepared a legal opinion which agrees with our conclusion that 1919 PA 369 was never validly adopted.

mation,[16] and even considering the consequences of disregarding it, *Attorney General v Joy,* 55 Mich 94; 20 NW 806 (1884), must give way to the clear language of our Constitution when interpretation of that document is involved. Nor can long acquiescence by Wayne County taxpayers, *Johnson v Ballou,* 28 Mich 379 (1874), or time-honored administrative practice, *Lane v Dept of Corrections, Parole Board,* 383 Mich 50; 173 NW2d 209 (1970), relieve us of our solemn duty to say what the law is, especially where constitutional interpretation is at stake. The result we must reach is clear and unmistakable: since 1919 PA 369 was unconstitutionally adopted, it is void and of no effect in the City of Detroit.

A situation similar to that presented in the instant case was before our Supreme Court in *Dearborn Township v Dearborn Township Clerk,* 334 Mich 673, 681; 55 NW2d 201 (1952). In that case the Court was asked to invalidate a well-weathered statute which provided that Justices of the Peace be members of township boards. The separation of powers clause of the Constitution[17] was said to be violated by allowing Justices of the Peace to exercise the powers of members of the nonjudicial branches of government.

The Court, in overturning the statute, said:

"Our reluctance to overturn an action of the legislature increases when we are confronted by an enactment of such ancient vintage. For over 100 years justices of the peace have sat upon township boards within the State of Michigan without any question being raised as to their eligibility. If we were confronted with a matter

---

[16] *See, e.g.,* 1965 PA 363 and 1972 PA 154, both of which amendments to 1919 PA 369 were submitted to and adopted by the City of Detroit electorate.

[17] Const 1908, art 4, §§ 1 and 2.

of construction of a statute containing some claimed ambiguity or with a mere technical objection, long acquiescence in a certain interpretation of such statute might be binding on us. But neither contemporaneous construction nor long acquiescence can prevail over the plain language of the Constitution when the constitutional question is presented to us for the first time. Repetition of error does not correct it nor can acquiescence for a very long time legalize a clear usurpation of power. * * * "

The violation asserted here, even more than the breach of the separation of powers clause found in *Dearborn Township,* strikes at the very foundation of our constitutional system. Taxation without the consent of the governed is hardly an alien doctrine. A revolution was fought to guarantee this protection to our citizens. It is important that we reaffirm our allegiance to this principle, embodied in art 5, § 30 of the 1908 Constitution, on the eve of the bicentennial celebration.

Accordingly, we hold that Wayne County is not empowered to assess its taxpayers any part of the salary costs of the judges of the Recorder's Court. Wayne County officials are hereby restrained from making any further such assessments.

The order granting summary judgment in favor of defendant is reversed. Summary judgment is entered in behalf of plaintiff. No costs, a public question being involved.

Judge CARLAND did not participate due to illness.